IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **TEXAS HEALTH RESOURCES** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Case No. 4:07cv450 |
| | § | (Judge Schell/Judge Bush) |
| **TRIAD-DENTON HOSPITAL,** | § | |
| **GP, LLC., ET AL.,** | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Defendants have filed a Motion to Exclude from Evidence the Opinion Testimony of Plaintiff's Damages Expert M. Ray Perryman. (Dkt. 109). The Plaintiff, Texas Health Resources (THR), is a partner in the TTHR limited partnership composed of Triad-Denton Hospital GP, LLC and Triad-Denton Hospital, LP. THR's interest is 20%. Perryman was retained to give an opinion on damages sustained by THR when, as it contends, the other partners refused to sell their interest to THR on the occurrence of a "triggering event" as contemplated by the parties' agreement. THR seeks damages from its partners and the purchaser of its partners' assets in the partnership. THR alleges a number of contract as well as tort causes of action.

The Defendants contend that Perryman's report is fundamentally flawed and cannot survive a *Daubert* challenge. First, Perryman's analysis does not focus on market value, but what the intrinsic value of the hospital would have been to THR. Second, Defendants argue that a key adjustment made by Perryman for insurance reimbursement is nothing more than a guess, and this undermines his analysis. Defendants request that the Court exercise its broad discretion under Fed. R. Evid 702 to exclude Perryman's opinion.

1

As Perryman points out, THR was a 20% partner in a joint venture with the other partners for the purpose of building a $100 million hospital replacement facility adjacent to the existing Denton Community Hospital facility. The partnership agreement provided that THR had a right to buy out the Triad Defendants if a Triad change of control occurred. The agreement provided that, should a change of control occur, then THR could purchase the Triad Defendants' interest at the "special purchase price" referenced in the agreement. According to the Complaint, THR attempted to exercise its right with a number it believed represented the price, but as frequently happens where money is concerned, the Triad Defendants thought the special price was much higher. Perryman states that the economic damages related to THR's alleged loss of its option to exercise its special rights to purchase can be determined by valuing THR's special rights to purchase as provided in the Amended Partnership Agreement (14.3). He goes on to opine that the value of the special rights to purchase is equal to the difference between the value of the interest owned after the transaction and the total value and/or cost to acquire the interest. Perryman then states that he used a discounted cash flow model (income approach) to determine the investment value of Presbyterian Hospital of Denton to THR. Perryman calculated the free cash flow to THR for a five-year period discounted. He then calculated a normalized level of free cash flow for the first year after the five-year projection period. He then states that the total value of the firm (presumably THR) is the summation of all discounted cash flows for the five-year period, plus the discounted terminal value. Perryman then analyzes the 20% interest owned by THR. In his opinion, the value of THR's 20% ownership in the limited partnership is calculated much like the value to THR for the total hospital. He then factors in the cost to purchase the 80% share of the Defendants and adds to that cost the remaining facility lease payments and purchase price for the existing premises. His figure is a special purchase price of $106,000,000. He then subtracts this amount from the his calculation of the value of the

share in the hospital as a whole and determines that the net economic valuation of THR's special rights to purchase is $275,000,000.

An expert's testimony must be reliable at each and every step, or else it is inadmissible. "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine, Inc.,* 482 F.3d 347, 355 (5th Cir. 2007) (*quoting Heller v. Shaw Indus. Inc.,* 167 F.3d 146,155 (3rd Cir.1999). Fed. R. Evid. 702, in part , provides that a qualified expert may testify in order to assist the trier of fact to understand the evidence or to determine a fact in issue if (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. When evaluating expert testimony, the overarching concern is whether or not it is relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Perryman states that he has used the income approach analysis in his methodology. The income approach to value proceeds on the premise that a buyer of income-producing property is primarily interested in the income its property will generate. *Polk County v. Tenneco, Inc.,* 554 S.W.2d 918, 921 (Tex.1977). The income method involves estimating the future income of the property and applying a capitalization rate to that income to determine market value. *Id.. City of Dallas v. Redbird Dev. Corp.,* 143 S.W.3d 375, 384 (Tex.App.-Dallas 2004, no pet.). The capitalization rate is the rate of interest investors would require as a return on their money before they would invest in the income-producing property, taking into account all the risks involved in that particular enterprise. *City of Dallas,* 143 S.W.3d at 384. The Defendants argue that Perryman's analysis is flawed because it is not a market analysis. The Defendants also argue that the opinion

3

is fundamentally flawed in that Perryman estimates increases in insurance revenue which is entirely baseless and speculative.

Perryman initially states that the economic damages related to THR's alleged loss of its option to exercise its special rights to purchase can be determined by valuing THR's special rights to purchase as provided in Paragraph 14.3 of the Amended Partnership Agreement. He goes on to state that the value of the special rights is equal to the difference between the value of the interest owned after the transaction and the total value and/or cost to acquire the interest. He goes on to opine that the total cost to acquire the interest is equal to the value of THR's 20% existing interest in TTHR LP plus the purchase per the terms in the Amended Partnership Agreement.

As previously noted, he says he uses an income approach (discounted cash flow) (DCF) to determine the investment value of Presbyterian Hospital of Denton *to* THR. The DCF method measures fair market value by calculating the present value of the stream of future cash flows of a company. There are three components to the DCF method: (1) The cash-flow projections for a forecasted period; (2) the terminal value; and (3) the appropriate discount rate. Terminal value is calculated by adjusting cash flows in the final period to represent the future cash-generating capability of the company. This "normalized" cash-flow figure is then capitalized as a perpetuity by the previously determined discount rate, adjusted for some level of growth that can be expected to continue into perpetuity. The resulting terminal value is then discounted back to present value using the discount rate. Under the DCF method, the present value of the cash-flow projections and the terminal value are ascertained using the appropriate discount rate, and the sum of those amounts is the fair market value of the company. The discount rate is calculated using the weighted average cost of capital (WACC) formula, which combines the after-tax costs of debt and equity into a weighted average overall cost of capital. The cost-of-equity capital is equivalent to the long-term

4

expected annual rate of return an investor seeks on an investment in stock. It is calculated using the capital asset pricing model (CAPM).

One of the variables in the CAPM formula is beta, which measures the volatility in financial returns of a target firm. Beta is calculated by comparing the movement in the returns of a stock against the movement in the returns of the stock market as a whole, which has a beta of 1. For example, if a stock generally increases 2 percent in price when the market increases by 1 percent, the stock would have a beta of 2 (2 divided by 1). *See generally BTR Dunlop Holdings, Inc. v. C.I.R.*, 1999 WL 1030453 (U.S. Tax Ct.) As one Court has noted, the discounted cash flow method measures "the present value of the anticipated future economic benefits of ownership" of the company. Specifically, valuation under the DCF method entails projecting a future stream of economic benefits, and then discounting that future economic benefit to reflect its present value. Critical to the reliability of the results obtained from a DCF analysis is the determination and calculation of: (1) the future economic benefit to be measured, and (2) the rate at which that future benefit should be discounted to reflect its present value. *In re Med Diversified, Inc.*, 346 B.R. 621 (E.D.N.Y. 2006).

As noted, there are two main complaints with Perryman's analysis. First, he uses the term value as to THR. The question is what is the market value of the hospital, not what is its value to THR. The Amended Partnership Agreement provides that the Agreement shall be governed by and construed in accordance with the substantive federal laws of the United States and the laws of the State of Delaware (17.2). Both parties have cited the Court to Delaware law. "Market value" is the price which would be agreed upon by a willing seller and a willing buyer without any compulsion upon the seller to sell or the buyer to buy. It is not a value which is peculiar to the owner. *See State ex rel. Sec'y of Dep't of Highways & Transp. v. Davis Concrete of Delaware, Inc.,* 355 A.2d 883,886

5

(Del. 1976). As a general rule, the measure of damages for breach of contract to sell land, stock, or other goods is the difference between the market value and contract price. *ITSI Delaware Inc., v. Townsend,* 1993 Del. Super, LEXIS 146 *10 (Del. Super. Ct. 1993). In Delaware, the comparative approach is recognized as a proper way to determine value. A comparison of similar companies is used when calculating the value of a company through the use of earnings and other multiples. *In re Radiology Assocs., Inc. Shareholder Litig.,* 611 A.2d 485, 489 (Del. Ch. 1991). Perryman did not pursue this type of comparison. However, Delaware courts frequently employ the DCF as at least one method of valuation. *Id.* Here, Perryman did attempt to perform a DCF. However, he strayed beyond a traditional model of DCF and incorporated several items that amount to sheer speculation.

Most troubling is the BCBS reimbursement analysis. The projection is based on a blended rate for several THR hospitals with a contract that expires in 2009. While it is not clear from the report, it appears that the estimate of patient revenues includes this 33% increase in perpetuity. In the Court's opinion, this is speculative. The Court conducted a brief telephonic conference on this issue, and both parties agree that the reimbursement rate is built into the formula even as to the termination valuation. This is too speculative, and the Court finds that Defendants' objection on this ground is meritorious and Perryman's opinion is excluded.

Therefore, for the reasons stated herein, Defendants' Motion to Exclude from Evidence the Opinion Testimony of Plaintiff's Damages Expert M. Ray Perryman. (Dkt. No. 109) is hereby **GRANTED.**

**SO ORDERED**.

SIGNED this 26th day of November, 2008.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE